## FORD v. UNITED STATES.

### No. 46057.

Court of Claims.

Feb. 3, 1947.

JONES, J., dissenting in part.

———◆———

Mahlon C. Masterson, of Washington, D. C. (Ansell and Ansell, of Washington, D. C., on the brief), for the plaintiff.

Currell Vance, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

Before LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff sues for the extra compensation to which he claims he is entitled from January 15, 1942 through September 10, 1942, by reason of the fact that during that time he says he was required by orders of competent authority to participate regularly and frequently in aerial flights; and that he did so.

It is admitted that plaintiff did participate regularly and frequently in aerial flights, but it is denied that he did so "by orders of competent authority." Defendant also urges that the orders directing him to participate in these flights recited that he was not entitled to flying pay and that, having participated in them with this understanding, it must be held that he waived his statutory right to the additional pay.

We are of opinion that plaintiff's participation in the flights was pursuant to orders of competent authority.

The Act of June 10, 1922, 42 Stat. 625, 633, under which plaintiff sues, in conjunction with the Acts of June 4, 1920, 41 Stat. 759, 768, and the Act of July 2, 1926, 44 Stat. 780, provides that "Regulations in execution of the provisions of this section shall be made by the President * * *." Pursuant thereto the President promulgated Executive Order 5865, dated June 27, 1932, sections 5, 6, and 14 of which read in part as follows:

"5. Each officer, warrant officer, or enlisted man of the Army who is duly assigned to a course of instruction for qualification as aircraft pilot or aircraft observer, * * * shall be required to participate regularly and frequently in aerial flights; orders for such requirement shall be issued by the Chief of the Air Corps for the Army, * * *.

"6. Each officer or warrant officer other than * * * those specified in paragraphs 2, 3, 4, and 5, may be required to participate regularly and frequently in aerial flights; orders for such requirement shall be issued by the Chief of the Air Corps for the Air Corps of the Army, the Secretary of War for other branches of the Army, * *. *.

"14. Compliance with the foregoing requirements constitutes participation in regular and frequent aerial flights within the meaning of the act approved July 2, 1926 (44 Stat. 780), and no flight pay shall accrue to any person during any period in which the provisions of this order are not complied with."

Plaintiff in order to be entitled to flying pay must have been required to participate in the flights pursuant to orders issued by

the Secretary of War, inasmuch as he held a commission, not in the Air Corps, but in the Field Artillery. We are of opinion that he did participate in them pursuant to such orders.

As will be seen from a reading of finding 2 the Secretary of War, through the Adjutant General, authorized the Chief of Field Artillery to initiate and conduct an experiment in air observation for Field Artillery by a unit of the Field Artillery, instead of by the Air Corps, as had been done formerly.

Acting under this authority, the Chief of Field Artillery directed the Commandant of the Field Artillery School at Fort Sill, Oklahoma, to conduct the test flights. That officer, in turn, "designated ["the persons listed below"] as pilots for the purpose of flying light observation aircraft operated by the Field Artillery." Plaintiff was one of those named below; he was given the designation of "Director of Air Training." Pursuant thereto he flew regularly and frequently as a pilot in the performance of his duties as Director of Air Training.

We are of opinion, therefore, that plaintiff, an officer in the Field Artillery, participated in these flights pursuant to the order of the Secretary of War and, therefore, that he is entitled under the statutes and the Executive Order to the "flying pay" provided for therein. The order of the Secretary of War provided for the making of the flights; plaintiff's commanding officer was designated to conduct the flights; and plaintiff was ordered by him to make them; and he did so pursuant to these orders.

It was not intended by the Executive Order, of course, that the Secretary of War should name the particular individuals to make the flights. His duty was to authorize them, and it was permissible, and indeed necessary, for him to leave to his subordinates the designation of the particular individuals to make them.

Nor do we think defendant's second defense is good. The fact that the order requiring plaintiff to make the flights recited he would not be entitled to flying pay does not, and could not deprive him of the compensation to which he was entitled un-

der the laws of Congress. An officer of the Army has no right to set aside an Act of Congress, or to take away from one of his subordinates a right given him by an Act of Congress.

Nor is plaintiff barred from claiming the compensation to which he was entitled under the laws of Congress by the fact that he volunteered to make the flights and signed an application therefor in which it was recited: "It is understood that I will receive no additional pay or increased grade unless I am selected as a member of one of the test corps, and thereafter my pay will depend upon a grade recommended by the Chief of Field Artillery."

Even if this can be construed to constitute a waiver of flying pay, it is, nevertheless, a complete nullity, under a number of decisions of this court and of the Supreme Court; e. g., Glavey v. United States, 182 U. S. 595, 21 S.Ct. 891, 45 L.Ed. 1247; United States v. Andrews, 240 U.S. 90, 36 S.Ct. 349, 60 L.Ed. 541; MacMath v. United States, 248 U.S. 151, 39 S.Ct. 31, 63 L.Ed. 177; Bancroft v. United States, 56 C.Cl. 218, affirmed on appeal 260 U.S. 706, 43 S.Ct. 165, 67 L.Ed. 473.

Plaintiff's pay is fixed by Act of Congress, and not by the Chief of Field Artillery, and neither this officer nor any other one had a right to require him to waive or forfeit the pay to which he was entitled under the Acts of Congress. If it is to be said that he waived his right to flying pay, this waiver, under the authorities cited, is a complete nullity.

Plaintiff is entitled to recover. Judgment will be entered in his favor and against the United States for $1,619.06. It is so ordered.

MADDEN and LITTLETON, Judges, concur.

JONES, Judge (dissenting in part).

I would allow plaintiff to recover only for that part of the time after the voluntary test service had been completed and the units had been recognized as a part of the flying service.

This is a suit by plaintiff, an officer commissioned in the Field Artillery of the Uni-

ted States Army, for flying pay while participating in a service test of air observation as an organic part of the Field Artillery.

In the year 1941 the War Department initiated such a service. The force making the test included pilots qualified according to regulations of the Civil Aeronautics Administration. The plaintiff possessed such qualifications. He was made director of the new air training units. Under the special order dated January 15, 1942, certain persons were listed, each with his own consent, and designated as pilots for the purpose of flying light observation aircraft operated by the Field Artillery. The order stated that the military personnel, though participating regularly and frequently in aerial flights, were not entitled to flying pay.

The plaintiff performed the duties thus assigned to him and participated regularly and frequently in aerial flights as a pilot during the period January 15 through September 10, 1942. The hours he flew during this period were sufficient in number and character to entitle him to flying pay if he had been a member of a regular military air service unit. On September 10, 1942, plaintiff was classified as a liaison pilot, after which date he drew flying pay.

Plaintiff contends that notwithstanding the terms of the order reciting otherwise, nevertheless because of the basic acts of the Congress and the regulations issued pursuant thereto, and because of the nature of the service rendered, he is entitled to flying pay during the period January 15 to September 10, 1942.

Section 13a of the National Defense Act, as amended, 44 Stat. 780, 37 U.S.C.A. § 29, provides that officers and enlisted men of the army shall receive an increase of 50 percent of their pay when by orders of competent authority they are required to participate regularly and frequently in aerial flights as defined by such executive orders as may be issued by the President.

Section 20 of the Act of June 10, 1922, 42 Stat. 632, as amended by section 6 of the Act of July 2, 1926, 44 Stat. 782, 37 U.S.C.A. § 29, provides that all officers, warrant officers and enlisted men of all branches of the army, when by orders of competent authority they are required to participate regularly and frequently in aerial flights as defined by executive order, shall receive the same increase of their pay as is regularly authorized for like service.

Pursuant to this congressional authority the President issued Executive Order No. 5865 on June 27, 1932. This order was in effect at the time involved in this suit.

This executive order provides that flight orders for officers, warrant officers or enlisted men in the Air Corps of the Army shall be issued by the Chief of the Air Corps and that flight orders for officers or warrant officers in other branches of the Army shall be issued by the Secretary of War.

On December 10, 1941, the Adjutant General, by order of the Secretary of War, approved the recommendation for service tests in two Field Artillery airplane observation units as organic parts of the Field Artillery.

Pursuant to this authority the Chief of the Field Artillery issued a directive dated December 12, 1941, providing for the institution of such tests. Volunteers were invited, both officer and enlisted personnel. Forms for written application were signed by the plaintiff and others who volunteered for the service. The application forms recited that flying pay would not attach to the duties involved.

The period covered by the claim naturally falls into two parts—the period between January 15 and June 6, 1942, when the work was largely in the testing stage, and the period from June 6 to September 10, 1942. These periods will be considered separately.

In reference to the first period, the plaintiff would be entitled to the extra pay except for the fact that he had agreed to serve without such extra pay, and except for the peculiar provisions of the law and the orders issued pursuant thereto.

The hazards were just as great as in the regular flying service, the hours of flight met all the requirements, but during this first period when the new organization units were being tested the executive order required that orders placing individuals in

the Air Corps on flying status be issued by the Chief of the Air Corps. No such order was issued. During the same period the executive order required that flying orders for other branches of the Army should be issued by the Secretary of War. No such order was issued. For these reasons plaintiff is not entitled to recover extra pay for the period between January 15 and June 6, 1942, notwithstanding the logic of the circumstances would otherwise entitle him to such pay.

The period following June 6 falls into an entirely different category.

Prior to June 6, 1942, the Commanding General of the Army Ground Forces recommended to the War Department that these test observation units be included in the Field Artillery organization. On June 6, 1942, the Assistant Chief of Staff, by order of the Secretary of War, approved such recommendation. This had the effect of changing the organization from the experimental stage. Such approval order contains the following provision:

"(3) Extra Compensation and ratings:

"(a) Pilots will be authorized additional compensation for participation in frequent and regular aerial flights. A rating generally similar to that of a liaison pilot will be established for pilots."

It was clearly the purpose of this order to accept the new organization, and since it was addressed to the Commanding General of the Army Ground Forces, those who were participating, as well as those who were commanding the forces which were participating in the organization, had a right to rely upon this order of approval. Certainly those who had been carrying on these hazardous tests were thus brought squarely within the terms of the statute and thereafter met all the requirements for carrying out the legislative intent and the orders issued pursuant to the act.

On August 7, 1942, the Assistant Chief of Staff rejected the recommendation that these officers be given flying pay for the period between January 15 and June 6, 1942, assigning as his reasons substantially the same as those given above, but his rejection discusses only the period prior to June 1, 1942, and does not discuss the question of flying pay after June 6, 1942.

The Commanding General of the Army Ground Forces, who was in position to know what these men were doing, made the recommendation that these pilots be given flying pay. He had information direct from the field, and was probably in a better position than anyone else to know just what they were doing and what they were accomplishing, and since the Assistant Chief of Staff, by direction of the Secretary of War, approved his recommendation for the change in the organization on June 6, 1942, there is no logical reason why the plaintiff should not receive his flying pay after that time.

I would allow plaintiff to recover flying pay for the period June 6 to September 10, 1942, in the sum of $693.75.

WHALEY, Chief Justice, took no part in the decision of this case.