Whitaker, Judge,
delivered the opinion of the court:
Plaintiff sues for the 50 per centum extra compensation to which he says he is entitled under section 18 of the Act of June 16, 1942 (56 Stat. 359, 368), because, pursuant to “orders of competent authority,” he was “required to participate regularly and frequently in aerial flights.”
Defendant admits that he did participate in aerial flights regularly and frequently pursuant to orders of competent authority. This brings plaintiff within the scope of our decision in William W. Ford v. United States, 108 C. Cls. 174, wherein we held plaintiff was entitled to the 50 per centum extra compensation.
Defendant, however, says plaintiff is not entitled to 50 per centum extra compensation because of the provisions of the Military Appropriation Act of June 30,1941 (55 Stat. 366) and of the Military Appropriation Act of July 2, 1942 (56 Stat. 611, 612) which limit the extra pay to “nonflying officers” for making aerial flights to $720 per annum.[1]
The defendant did not rely on these Acts in the briefs or in the arguments in the Ford case, supra, and we did not consider them. They put a very definite limitation on the extra compensation of “nonflying officers.” If plaintiff was a nonflying officer, he is subject to the limitation stated.
Several different Acts of Congress have defined a flying officer, substantially, as “one who has received an aeronautical rating as a pilot of service types of aircraft or one who has received an aeronautical rating as an aircraft observer or as any other member of a combat crew under such regulations as the Secretary of War may prescribe * * *.” A flying *291 officer was so defined in section 1 of the Act of October 4, 1940 (54 Stat. 963). Plaintiff did not receive such, a rating until September 10,1942.
Plaintiff says, however, he was a qualified pilot according to Civil Aeronautics regulations and that during the period in question he performed the same service as one who had received from the Army an aeronautical rating as a pilot of service types of aircraft. This is true, but he had not received the rating, and Congress said that those who had not were entitled to a maximum extra compensation of $720 per annum. Plaintiff was no doubt as well qualified to wear his spurs as he who had won them, but Congress granted the full 50 per centum extra compensation only to those who had actually received the rating. Baker v. United States, 100 C. Cls. 212.
It is clear that the rating referred to in the Act was an Army rating. The rating as a pilot by the Civil Aeronautics Administration is not the rating referred to in the definition of a flying officer. The Civil Aeronautics Administration issues pilot’s licenses to many people unqualified to fly “service types of aircraft.” Besides, the context clearly shows that the rating intended was an Army rating and none other.
Plaintiff has been paid the amount fixed by the Acts of June 30,1941, and July 2,1942, for nonflying officers. He is entitled to no more. His petition will be dismissed.
Howell, Judge/ MaddeN, Judge; LittletON, Judge; and Jones, Chief Judge, concur.

 The Act of July 2, 1942, with which the Act of June 30, 1941, ia similar, provides in part:
“Pay of the Army. For pay and allowances of the Army of the united States, * * *: Provided, That the appropriations contained in this Act
shall not be available for increased pay for making aerial flights by nonflying officers at a rate in excess of $720 per annum, which shall be the legal maximum rate as to such officers, and such nonflying officers shall be entitled to such rate of increase by performing three or more flights within each ninety-day period, pursuant to orders of competent authority, without regard to the duration of such flight or flights; Provided further, That during the continuance of the present war and for six months after the termination thereof, a flying officer as defined under existing law shall include flight surgeons, and commissioned officers or warrant officers while undergoing flying training: • * *_•>